CASE No. 1034.

### EX PARTE DUCKETT.

1. A prisoner was sentenced to imprisonment "in the state penitentiary at hard labor, for the term of two years from this date, February 27th, 1879;" but, by reason of his appeal, was not transferred from the county jail to the penitentiary until July 31st. *Held*, that the time for the commencement of the punishment was not of the essence of the sentence, and that the prisoner's term in the penitentiary was for two years from July 31st, 1879.
2. By the terms of this sentence, interpreted in the light of the laws then in force, this convict might be hired out, by the directors of the penitentiary to work on a railroad.

Original application to this court, heard April 18th, 1881. The case is stated in the opinion.

*Mr. R. C. Watts*, for petitioners.

*Mr. Youmans*, Attorney-General, contra.

April 25th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. This was a petition for writ of *habeas corpus*, representing that the petitioners were illegally imprisoned and restrained of their liberty by Thomas J. Lipscomb, superintendent of the state penitentiary, heard by the Chief Justice and reserved for the determination of the full court on the facts, agreed substantially, as follows:

The petitioners, Henry Duckett and Griffin Duckett, were convicted of grand larceny in the Court of General Sessions for Laurens county, in February, 1879, and Judge Aldrich pronounced the following sentence: "The sentence of the court is that you, Henry Duckett, and you, Griffin Duckett, be each imprisoned in the state penitentiary, at hard labor, for the term of two years from this date, February 27th, 1879."

The petitioners appealed to the Supreme Court, which appeal

was pending until July 28th, 1879, when this court dismissed the appeal and affirmed the judgment of the Circuit Court. The petitioners were in jail at Laurens at the time of their trial, and, pending the appeal, remained there. After the appeal was dismissed, July 31st, 1879, the sheriff of Laurens county delivered said petitioners to Thomas J. Lipscomb, Esq., superintendent of the state penitentiary, who afterwards, to wit, on October 1st, 1879, under an order of the board of directors of the penitentiary, hired them out to work on the Air-Line railroad. The petitioners now claim their discharge on the following grounds :

1. That their term of sentence expired on February 27th, 1881, two years from the date of their sentence, February 27th, 1879.

2. That they were sentenced to two years' hard labor *"in the penitentiary,"* and in hiring them out, the directors transcended their powers.

*As to the first ground* for discharge. The petitioners were delivered to the superintendent of the penitentiary, July 31st, 1879, under the sentence that they should be " each imprisoned in the state penitentiary, at hard labor, for the term of two years." Two years from the time they reached the penitentiary will not have expired until July 31st, 1881, so that it is clear that the petitioners have not served out the time *in the state penitentiary* to which they were sentenced.

But in framing the sentence these words were added : " From this date, February 27th, 1879," and it is urged that this being a matter touching the liberty of the citizen, the sentence should be construed literally, and that the two year's imprisonment in the penitentiary must be considered to have commenced at the date of the sentence, February 27th, although the parties were not actually lodged in the penitentiary until July 31st, 1879.

The judgment, though pronounced by the judge, is not his determination, but that of the law, which depends not upon the arbitrary opinion of the judge, but the settled and irreversible principles of justice. The substance of the sentence was that the petitioners should be "imprisoned in the state penitentiary, at hard labor, for the term of two years," and the date of the sen-

tence, as also the time when it was directed to be carried into effect, was not of the essence of the sentence, but merely directory. Mr. Bishop lays down the law as follows : "Though the sentence to imprisonment ought properly to specify at what time it is to be carried out, yet *time is not of the essence* of such a sentence. Therefore, a defendant who had been convicted of an assault, was sentenced to imprisonment for two calendar months, 'from and after the 1st day of November next,' but did not go into prison according to the sentence, and, at a subsequent term, it was decided that the sentence for two months' imprisonment be immediately executed ; the proceeding was held to be correct." 1 *Bishop on Cr. Proc.*, § 878 ; *Kelly* v. *State,* 3 *Smedes & M.* 518 ; *State* v. *Cockerham,* 2 *Ired. L.* 204. In the case last cited, Judge Gaston, with great clearness, said : "The time at which a sentence shall be carried into execution forms no part of the judgment of the court. The judgment is the penalty of the law as declared by the court, while the direction with respect to carrying it into effect is in the nature of an award of execution. In this case the judgment was that the defendant be imprisoned two *calendar months,* and the words which follow in the record, 'from and after the 1st of November next,' direct *the time* of executing the judgment. The entry, indeed, would have been more formal, had the judgment and the mandate for carrying it into effect been separate and distinct. But, however informal, it can be understood in conformity to the law as consisting of distinct parts, and, therefore, ought to be so understood."

So, in this case, the sentence was that the petitioners should be "imprisoned in the penitentiary, at hard labor, for the term of two years," while the direction with respect to carrying it into effect is in the nature of a mandate of execution.

This doctrine applies most appropriately to the case at bar. The absence of these parties from the penitentiary after sentence and before July 31st, 1879, was the result of their own act. They cannot say that they were undergoing part of their sentence during that time. They had the right to appeal, and the delay of five months was caused by their exercising their right of appeal to this court for the purpose of arresting the judgment which had to be pronounced before their appeal could be heard.

*State* v. *Rankin*, 3 *S. C.* 438. During the time the appeal was being prosecuted the sentence was practically suspended, for it was proper not to enforce it pending appeal, the result of which might have been to reverse the judgment. The time spent in jail at Laurens, after sentence, cannot be considered as in part execution of the sentence to "imprisonment in the penitentiary." It would have been false imprisonment to have detained them there under that sentence. They were there when they were convicted, and simply remained there awaiting the final determination of their trial, which was not ended until their appeal was dismissed. They did not commence to carry out the sentence until that time, July 28th, 1879, when, for the first time, it was proper to enforce the sentence. The delay was as much their own act as if they had escaped confinement during the intermediate time. In *Dolan's case*, 101 *Mass.* 222, the prisoner asked his discharge, although the period of his *actual confinement* had been less than that for which he was sentenced, by reason of his escape for nearly a year during the term. The court say : " We are of opinion that the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. The punishment is imprisonment, the period of which is expressed only by the designated length of time. * * * Expiration of time, without imprisonment, is, in no sense, an execution of sentence." We do not think the petitioners have served out " in the penitentiary," their full sentence of two years.

As to the second ground for discharge, that the petitioners were sentenced to two years' hard labor " in the penitentiary," and in hiring them out the board of directors transcended their powers. If it were true, as claimed, that the directors of the penitentiary have no right to farm out the convicts, we do not see that the result would be to entitle the prisoners to their discharge. On the contrary, they would be returned at once to the four walls of the penitentiary to serve out the remainder of their sentence. By an act of the general assembly, approved December 23d, 1878, (16 *Stat.* 727), it is declared " that from and after January 1st, 1879, the directors of the penitentiary, in their discretion, are hereby authorized and instructed to employ in the

institution or hire out all the convicts in that institution, under the regulations in such cases already made and provided for the employment of a portion of the convict labor," &c. We cannot say that this act is unconstitutional, and it was the law on February 27th, 1879, when Judge Aldrich sentenced the petitioners " to be imprisoned in the state penitentiary, at hard labor," &c.

This sentence must be construed with reference to the laws then of force, as to the power of the directors as to convicts. We do not see that the directors have transcended their powers, or placed the petitioners in any condition not allowed by their sentence, interpreted in the light of the laws in force at the time.

The motion for the discharge of the petitioners is refused, and they are remanded to the custody of the superintendent of the penitentiary.

SIMPSON, C. J., and McIVER, A. J., concurred.