FORD v. STATE.

(Division A. June 5, 1934. Suggestion of Error Overruled. July 16, 1934.)

[155 So. 220. No. 31064.]

Dean Belk, of Holly Springs, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

The appellant was tried and convicted in the circuit court of Marshall county on an indictment charging him with the murder of Robert Scott, and the jury, by its verdict, fixed his punishment at life imprisonment in the state penitentiary.

We shall not undertake to give a detailed statement of the facts, but the evidence clearly shows, according to the record, that appellant admits that he slew the deceased because he was "scared" of the deceased, who had cursed the appellant.

Appellant made statements outside of court that he killed the deceased because he had cursed him and called him vile names. The appellant says he struck the deceased with a stick, which the jury saw, with his left hand, the blow landing to the front of the deceased's head on the right side. In this, the appellant was contradicted by many witnesses who said that the deceased's skull was fractured or soft an inch above the left ear. The wound ran about three inches back of the ear.

It is undisputed that the deceased was a one-armed man. A witness had walked with the deceased to the shop where the killing occurred, had left the deceased there and walked about twenty-five steps when he heard a lick, turned, and saw the deceased falling and the appellant laying down a stick with which, it was admitted, the killing was done. When this witness left Scott, he

had a bucket hanging on the stump of his left arm. Appellant said the deceased put his right hand behind him and cursed him.

The record shows threats to kill by the deceased against the appellant, and likewise threats to kill by the appellant against the deceased. One witness testified that, on the day before the killing, the appellant pointed to a stick beside the door, and said: ''Don't you bother it. I am going to kill Bob Scott with this stick.'' There were confessions on the part of the appellant admitted in evidence which were to the effect that the appellant said he killed the deceased because he cursed him and called him vile names. It was conceded that the deceased was unarmed.

The record discloses that when the case was called in the lower court the appellant had no attorney, and, thereupon, the court appointed a member of the bar to defend him. The record also shows that the appellant was arraigned and pleaded not guilty. On August 29, 1933, the case was again called, and the appellant, by his counsel, moved the court for a special venire, which motion was sustained, the special venire drawn, and on September 2, 1933, a motion was made to quash the special venire facias, to enter a mistrial, and to award a new special venire upon the ground that the appellant was not present in court at the time the order sustaining the motion for a special venire was entered, but was in custody in the county jail.

There was much testimony taken. The judge (as a sworn witness on the motion to quash) of the trial court was positive that the appellant was in court when the above proceedings were had. There was a conflict in the evidence, and the trial judge overruled the motion.

On the hearing of this motion, the attorney appointed to represent the appellant as a witness on the motion to quash made the following statement: ''I desire to state this. Upon the completion of the calling of the witnesses for the defendant, the court announced him ready for

trial. I then asked the court to have the sheriff bring the prisoner up that I desired a conference with all the witnesses and desired that the prisoner be present. The court turned to Mr. Jones, the sheriff, and directed him, in my presence, to bring the prisoner and turn him over to me. Mr. Jones then turned to deputy sheriff, Edwards and said, 'Get Will Ford.' I desire further to state that the prisoner, the defendant, was not in the court room at the time of the sustaining of the motion for a special venire facias, and that some fifteen or twenty minutes later, Mr. Edwards brought the prisoner, the defendant, in through the door of this court room, as all prisoners have been brought during this term, and seated him where the prisoners have been accustomed to sit during this term, and Mr. J. C. Miller, who was sitting there arose and gave the defendant his chair. I desire to further state that shortly after the arrival of the prisoner, Mr. Hindman Doxey walked up to me and asked me a question, was not the defendant in the court room when the venire was drawn.''

Waiving aside the conflict in the evidence as to whether or not the accused was present in court, it appears to this court that the jury impaneled and sworn to try this case was fair and impartial. We are of the opinion that counsel could not, knowingly, in the absence of his client, proceed with his motion, and, after the venire had been drawn and the case called for trial, take advantage of his knowledge not then disclosed to the court. He was, for every purpose connected with this trial, counsel for the accused, and according to his statement, the accused was brought into court within fifteen minutes after the entry of the order and the drawing of the special venire. It was his duty then to make known to the court that he desired to take advantage of the contention that the accused was not present in court. If he had done so, the issue of fact between the witnesses could not have arisen, and if any injury had been shown which was apparent to the court it could then have been corrected easily. But

he did not make known to the court until Saturday, after the special venire had been summoned and the case ready for trial, that he desired to avail himself of this point on behalf of the accused. He waived it. The fact that he was appointed counsel for the accused by the court did not render him any less counsel than if he had been selected and paid by the accused for his services. This act as to procedure was binding on the appellant. See Scarborough v. Harrison Naval Stores, 95 Miss. 497, 51 So. 274, 52 So. 143.

In the absence of any showing that there was an unfair drawing of the special venire, and more particularly in the absence of any showing that appellant was not tendered a fair and impartial jury, we are bound to say that the absence of the accused during this preliminary proceeding, if he was absent, wrought no damage, whatever, to the accused, and denied him no substantial right, to which he was entitled under section 26 of the Constitution of 1890, or any other section or statute, in so far as this point is concerned. The accused was represented by counsel, and if he desired to disapprove the action of his counsel as to voluntarily and knowingly making a motion before the court for a special venire, and having it disposed of in the absence of the accused, he had the right so to do, and counsel had the right to waive the presence of the accused. There is no earthly reason why the accused is injured by his absence.

Counsel cited many cases, some from this court, but none on the question of absence of the accused from the court at the time of the disposition of a preliminary motion, such as we have before us, or involving the law applicable to the absence of the accused while a special venire was being drawn. Section 1276, Code 1930, provides, in part, as follows: "In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. . . ."

It will be observed that this statute permits the ac-

cused, in all criminal cases, to be absent from the court room, subject to the discretion of the court. In the case of Thomas v. State, 117 Miss. 532, 78 So. 147, Ann. Cas. 1918E, 371, this statute was construed and applied, and that case is controlling to the effect that the accused may waive his presence even in a capital case, but the statute also safeguards the accused against any damage, or the loss of any substantial right, at his trial, and this is true whether granted by statute, constitution, or the common law. In the case at bar, there is not any question of being confronted by the witnesses against him. Counsel for the accused voluntarily proceeded with the motion, knowing that his client was not present, and he must have known that if he had desired the presence of the accused, the court would promptly have seen to it that the accused was present.

The case of Thomas v. State, supra, overrules the cases of Sherrod v. State, 93 Miss. 774, 47 So. 554, 20 L. R. A. (N. S.) 509, Warfield v. State, 96 Miss. 170, 50 So. 561, and Watkins v. State, 110 Miss. 438, 70 So. 457, and since that time has been the law in this state under the statute quoted above, if, in fact, it was ever the law that the presence of the accused was necessary on such occasions as here under consideration. We call special attention to, and compare with the case of Thomas v. State, supra, the opinion of Judge SIMRALL in Rolls v. State, 52 Miss 391; the opinion of Judge THACHER in Kelly & Little v. State, 3 Smedes & M. 518; and the opinion of Judge THOMPSON in Lipscomb v. State, 76 Miss. 224, 25 So. 158.

The time is rapidly passing when a mere, naked legal point, where no harm or injury is done, may be availed of by an accused in order to vacate the judgment of a court, as indicated in Thomas v. State, supra.

In the case at bar, the evidence was ample to support the verdict of murder. Counsel for the appellant did not, by his motion to exclude the evidence, or instructions given or refused by the court, ask for instructions as to manslaughter. Consequently, he cannot now complain be-

cause the court did not grant that which he did not ask. Grady v. State, 144 Miss. 778, 110 So. 225, and Dobbs v. State, 167 Miss. 609, 142 So. 500.

There are no other matters of merit assigned as error. The appellant had a fair and impartial trial.

Affirmed.