268 So.2d 353 (1972)
Arthur MYERS
v.
STATE of Mississippi.
No. 46626.
Supreme Court of Mississippi.
November 6, 1972.
*355 Wilroy, Wilroy & Hagan, Hernando, for appellant.
A.F. Summer, Atty. Gen., by John M. Kinard, Special Asst. Atty. Gen., Jackson, for appellee.
*354 SMITH, Justice:
Arthur Myers (with others) was charged by indictment with the murder of a DeSoto County Deputy Sheriff. Upon the conclusion of his trial upon that charge in the circuit court of that county, the jury returned a verdict of guilty as charged, and accordingly he was sentenced to suffer death.
Arthur Myers, the appellant here, is a brother of Marvin Myers, also charged with murder in the same indictment. The latter's conviction was reversed and the case against him remanded by this Court for retrial as reported in Myers v. State, 254 So.2d 891 (Miss. 1971).
According to the evidence for the prosecution in the case now before us, Arthur Myers, the appellant in this case, in the course of the assault upon the officer which resulted in his death, beat him (the officer) on the head with a large, heavy flashlight, fracturing his skull.
The case against Arthur Myers is amply supported by direct eyewitness testimony of another of the coindictees, as well as by medical and other evidence.
Following his arrest, after having been properly warned, Arthur Myers made a statement to the officers that he was present when the officer was attacked but did not remember whether he had struck him or not. This statement was not reduced to writing. Later, in another statement to the officers, which was taken down in writing, Myers said that he had not struck the officer. There was testimony as to the oral statement and Myers himself introduced the written statement. However, Myers did not testify as a witness in his own behalf. Consequently, the testimony as to his role in the homicide was not contradicted by direct testimony and his version of what occurred is reflected only by the written statement which he introduced into evidence.
Several grounds are assigned for reversal.
Since this case was tried the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In view of the decision in that case, the death penalty may no longer be imposed upon one convicted of murder under the Mississippi statute as now written. Therefore, it will be necessary, in any event, to remand the case to the trial court for resentencing of appellant. This circumstance makes it unnecessary to discuss in detail several points raised with respect to the voir dire examination of prospective jurors by the District Attorney touching their attitude toward imposition of the death penalty.
It was not improper, at the time, for the District Attorney to examine the prospective jurors as to their attitude toward imposition of the death penalty. Murphy v. State, 246 So.2d 920 (Miss. 1971); McCaskill v. State, 227 So.2d 847 (Miss. 1969); Phenizee v. State, 180 Miss. 746, 178 So. 579 (1938); Williams v. State, 32 Miss. 389 (1856). It was also his duty to make such inquiries as would insure that the jurors would be fair and impartial to the defendant as well as to the State's case. McCaskill v. State, supra. In passing upon the extent and propriety of questions addressed to prospective jurors, the trial court has considerable discretion. McDonald v. State, supra. Moreover, the statutory method of selecting a jury is directory and unless it is shown that there was fraud, or such a radical departure from the procedure *356 prescribed by statute as to be unfair to the defendant or to prevent a fair trial or deny to him due process of law, the conviction will not be reversed. Moore v. State, 237 So.2d 844 (Miss. 1970); Capler v. State, 237 So.2d 445 (Miss. 1970); Armstrong v. State, 214 So.2d 589 (Miss. 1968).
The outlawing of the death penalty by the United States Supreme Court also takes much of the force from the objection now made for the first time, to certain remarks of the District Attorney made in his argument to the jury, to the effect that appellant should be in the death chamber with his brother, Marvin Myers. We have no hesitancy in saying that this statement by the District Attorney was improper, but no objection was made to it at the time. Why an objection was not made is not reflected by the record and must remain within the breast of counsel. Whether it was felt that a "good" jury for the defendant was in the box or whether some other tactic or strategy dictated their silence, we are unable to say. Under our system of jurisprudence, contemporaneous objection is necessary in order to preserve the right to raise a point on appeal. If an objection had been made, the trial court might have admonished the prosecutor and instructed the jury not to consider the offensive matter, and, if this had not sufficed to obviate the prejudicial effect of the remark, the trial court might have declared a mistrial. Under the circumstances disclosed by the present record, an objection to the remarks of the District Attorney cannot be made here for the first time.
It is well established that in order for a party to predicate error upon alleged improper argument, he must make objection in the trial court at the time the argument occurs. Peterson v. State, 242 So.2d 420 (Miss. 1970); Collins v. State, 202 So.2d 644 (Miss. 1967); Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964).
The appeal also presents as ground for reversal the refusal of the trial court to accept appellant's offer, made through counsel, to withdraw his not guilty plea and to enter a plea of guilty. It is also argued that since the accused was not personally present when this offer was made to the court through his counsel, that he was denied the right to be present at an important step in his trial and therefore his conviction must be reversed. The offer, which was conditioned upon appellant being sentenced to life imprisonment, apparently to avoid the risk of imposition of the death sentence by a jury, was made by counsel out of the presence of the jury (in fact, before a jury had been selected) and was not accepted. Moreover, it played no part in the trial of appellant and in nowise affected, or contributed, to his conviction.
In Dickerson v. State, 202 Miss. 804, 807-808, 32 So.2d 881, 882 (1947), the appellant also offered to plead guilty and insisted that his plea be entered. The trial court declined to accept the plea. This Court on appeal had the following pertinent comments:
In some states the statutes permit pleas of guilty in capital cases, and authorize the trial judge to impose the death penalty if upon an examination of the facts such a penalty is deserved. We have no such statute in this state. Rather all our statutes in capital cases place the death sentence within the sole province of the jury, and no such sentence can be imposed by any judge unless he has the authority of the jury therefor. The defendant concedes that this is true.
[1] If, then, the trial judge were compelled to accept a plea of guilty in capital cases and could do no more than thereupon to pronounce sentence, as apparently the defendant contends, it would put it in the power of any defendant to abolish capital punishment so far as he is concerned  would enable him to make his own law in that respect. Manifestly this cannot be permitted. A case in point is Green v. United States, 40 App.D.C. 426, 46 L.R.A.,N.S., 1117.

*357 [2] We do not say that the trial judge may not accept a plea of guilty in a capital case, but if he does so he must see to it, first, that the plea is entirely voluntary and that the defendant fully realizes and is competent to know the consequences of such a plea, and second, a competent and impartial jury must be empanelled and the material circumstances of the crime must be placed before the jury with such fullness that the jury will be well advised on the issue whether they should adjudge the death sentence.
[3] In view of these essential steps, we think it ought to be and is within the discretion of the trial judge whether he will accept a plea of guilty in a capital case or will decline it and put the case to trial on its full merits. If he takes the latter course nothing is thereby done of which the defendant may complain as being harmful to him, and it is the usual practice in this state to take that course. (Emphasis added).
This Court reiterated its position in Dickerson, supra, in the latter case of Rogers v. State, 243 Miss. 219, 228, 136 So.2d 331, 335 (1962) by again saying:
A defendant charged with a capital offense may plead guilty or not guilty, and the court may either accept the plea of guilty or decline the plea and put the case to trial on the merits.
Under the circumstances, appellant, although not personally present, was deprived of no right, particularly since the offer was not accepted and played no part in his ensuing trial.
In United States v. Cravatas, 330 F. Supp. 91, 100 (U.S.D.C.Conn. 1971), the defendant alleged that his absence from an in-chambers conference concerning his change of plea was prejudicial as it violated his right to be present "at every stage of the trial." The Court in Cravatas said:
Such conference clearly was not a stage of the trial; and in any event there was no conceivable prejudice to defendant as a result of his absence from a conference at which the only matters discussed were whether Attorney Lokos would be admitted to practice before the Court and whether the Court would accept a nolo contendere plea under the circumstances, the Court having permitted no discussion whatever at such conference on the subject of sentence (Finding (19)(d) above). Taylor v. United States, 385 F.2d 835, 836-837 (8 Cir.1967) (per curiam), cert. denied, 393 U.S. 879 [89 S.Ct. 181, 21 L.Ed.2d 153] (1968); Estes v. United States, 335 F.2d 609, 618 (5 Cir.1964); Cox v. United States, 309 F.2d 614, 615-618 (8 Cir.1962); Pope v. United States, 287 F. Supp. 214, 218-219 (W.D.Tex. 1967), aff'd, 398 F.2d 834 (5 Cir.1968) (per curiam), cert. denied, 393 U.S. 1097, [89 S.Ct. 886, 21 L.Ed.2d 787] (1969); Smith v. United States, 277 F. Supp. 850, 860-863 (D.Md. 1967), aff'd. 401 F.2d 773 (4 Cir.1968) (per curiam).
It is likewise argued that appellant's personal absence from two other in-chambers conferences attended only by court and counsel requires reversal. One of these occurred when counsel submitted to the court their jury challenges. The other was the occasion when counsel argued to the court a motion for a new trial.
It is stated that appellant was "excluded" on each of these occasions. However, the record does not bear out that charge, but does reflect that, for whatever reason, he was not present. It is not suggested that his presence was desired or requested and no point was made in the trial court as to his absence. Mississippi Code 1942 Annotated section 2519 (1956) provides, among other things:
In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto.
*358 In Brister v. State, 231 Miss. 722, 725-726, 97 So.2d 654, 655 (1957), the Court said:
Appellant did not go into the anteroom with the judge and the attorneys. No one told him to do so and no one told him not to do so. His attorneys did not think about it at all until twelve jurors had been selected, after which they made a motion for a mistrial. After the motion was overruled, appellant went to the room and was present when the thirteenth (alternate) juror was selected. There is no showing whatever that appellant was in any way prejudiced by not being present when the challenges were exercised, or that he did not have all the opportunity he or his attorneys desired to confer after completion of the voir dire and before the jurors were challenged. It also appears that appellant sat in the courtroom in the presence of the prospective jurors while the challenges were being exercised in the anteroom.
[1] Since the absence of appellant from the anteroom was voluntary, the right to be present during that particular phase of the trial was waived. Sec. 2519, Mississippi Code of 1942; Williams v. State, 103 Miss. 147, 60 So. 73; Thomas v. State, 117 Miss. 532, 78 So. 147; Ford v. State, 170 Miss. 459, 155 So. 220; Hamburg v. State, 203 Miss. 565, 35 So.2d 324; Sims v. State, 209 Miss. 545, 47 So.2d 849. The cases of Sherrod v. State, 93 Miss. 774, 47 So. 554, 20 L.R.A., N.S., 509; Warfield v. State, 96 Miss. 170, 50 So. 561, and Watkins v. State, 110 Miss. 438, 70 So. 457, were overruled by Ford v. State, supra.
The judge observed that the defendant did not go to the anteroom and did not consider it necessary to require him to do so. No prejudice was alleged or shown. It appears that appellant received a fair and impartial trial. The voluntary absence of appellant from the anteroom when the jurors were challenged did not constitute reversible error.
The eyewitness testimony of appellant's co-indictee was to the effect that appellant had struck the deceased several times on the head with a large, heavy flashlight. The prosecuting attorney handed the witness a flashlight of that type and began to question him about it, apparently intending to show that it was the same or similar to that used by appellant. The court, on his own motion, and before any objection had been made by counsel, raised the question as to the propriety of this method of proof and, after a conference out of the presence of the jury, the evidence was not admitted. It is now argued, however, that the mere production of the flashlight had so prejudiced the jury that a reversal is required. The District Attorney stated that, in the brief moment before the court intervened, the jury had not been in a position to, and did not, see the flashlight. Be that as it may, it does not follow that, where a witness has fully described the type and kind of weapon used, and a counterpart, or one of the same kind and size is offered to demonstrate its character, that a mere glimpse by the jury of the offered weapon, without more, is so prejudicial as to require reversal of the conviction which follows.
Appellant next assigns for reversal the court's denial of his motion for a change of venue. The record discloses that the evidence upon the question of whether the appellant would receive a fair trial in DeSoto County was conflicting. Several witnesses, including officials of the county, testified that there was no such feeling or prejudice against the appellant as would prevent his being fairly tried in that jurisdiction. *359 In Gallego v. State, 222 Miss. 719, 735, 77 So.2d 321, 328 (1955) this Court said:
[T]he matter of granting a change of venue is within the sound discretion of the trial judge. Shimniok v. State, 197 Miss. 179, 19 So.2d 760; and Wheeler v. State, 219 Miss. 129, 63 So.2d 517. The first of these cases involved the murder of a popular ex-sheriff in the county where the case was tried, and the other two peace officers in the line of duty. Both crimes were committed by strangers in the counties of the venue. We upheld the trial court in its denial of a change of venue in each case. This Court is not justified in reversing a case because of the refusal of a trial judge to grant a change of venue unless it clearly appears that there has been an abuse of the discretion vested by law in the trial judge. (Emphasis added).
See also Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944).
Moreover, the voir dire examination of prospective jurors did not support the proposition that appellant could not be fairly tried. In Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961) this Court held that it would not reverse the trial court's denial of a motion for change of venue where a fair proportion of the prospective jurors examined on voir dire stated that they could give the defendant a fair trial.
Other matters assigned as error requiring reversal have been carefully examined and considered and are without merit.
The conviction of the appellant of the crime of murder will be affirmed. The case will be remanded to the Circuit Court of DeSoto County for resentencing of the appellant, in view of the decision of the United States Supreme Court in Furman v. Georgia, supra.
Affirmed as to the findings of guilt; reversed and remanded for the purpose of resentencing.
All Justices concur.