710 So.2d 1222 (1998)
Robert LUDGOOD a/k/a Robert A. Ludgood, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00540 COA.
Court of Appeals of Mississippi.
March 24, 1998.
*1223 Calvin Daniel Taylor, George S. Shaddock, Pascagoula, for Appellant.
Michael C. Moore, Attorney General, Billy L. Gore, Sp. Asst. Attorney General, Jackson, for Appellee.
Before McMILLIN, P.J., and HERRING, HINKEBEIN and SOUTHWICK, JJ.
SOUTHWICK, Justice, for the Court:
¶ 1. Robert Ludgood was convicted of three counts of aggravated assault by the Greene County Circuit Court. He appeals and raises these alleged errors: (1) in allowing the State to question him regarding whether he blamed his sister for grabbing a knife during a family fight, and then removing him from the courtroom during the presentation of the motion for mistrial made as a result of the question being asked; (2) in refusing to allow the proffered jury instructions on the lesser-included offense of simple assault and an alternate form of verdict; and (3) in sentencing him to life imprisonment for each count of aggravated assault because it is greatly disproportionate to the crime committed. We find no error and affirm.

FACTS
¶ 2. On September 29, 1994, a family feud erupted between Ludgood and his sister Cassandra Leverette. Cassandra's husband, Addison Leverette, physically restrained Ludgood. These events took place in the home of Ludgood's mother, Amelia Miles.
¶ 3. Cassandra, Addison and Jamie Leverette, Addison's son, left the house and went to their vehicle. They testified they were leaving to avoid further conflict. Ludgood came outside carrying a rifle. He walked up to the front of the vehicle and pointed the rifle at Cassandra who was sitting in the front passenger seat. Addison pleaded with Ludgood not to shoot. Ludgood responded by striking Addison across the chest with the rifle. As a result, the rifle fell to the ground and a struggle ensued. The rifle was recovered by Cassandra's daughter and sister. There is conflicting testimony, but there is evidence that Cassandra took the rifle and pointed it at Ludgood, stating that she would kill him. Addison then took the rifle and placed it in their vehicle. Ludgood went into the house.
¶ 4. Cassandra, Addison and Jamie got into the vehicle and were preparing to leave when Ludgood came back out of the house carrying another rifle. As the Leverettes were speeding away, Ludgood shot three times into the vehicle. No one was injured by the shots. Addison drove them directly to the Greene County Sheriff's office where they turned in the first rifle and gave their statements. Ludgood immediately left town for seven days. Upon his return, Ludgood claimed that he had only tried to scare Cassandra when he pointed the gun at her. When asked about the shots that were fired, Ludgood claimed that he never intended to cause injury to Cassandra, Addison or Jamie, but that he was afraid that he would be shot because of the other rifle that was in the Leverette's car. There was no evidence that Addison, Cassandra or Jamie pointed the rifle at Ludgood or anyone else while in the car.
¶ 5. The jury convicted Ludgood of three counts of aggravated assault. After a sentencing hearing, the court sentenced Ludgood to the maximum penalty pursuant to Miss. Code Ann. § 99-19-83 (Rev. 1994), for each count of aggravated assault. Ludgood received three sentences of life in prison to run concurrently, with no possibility of reduction in sentence or parole.

DISCUSSION

I. MOTION FOR MISTRIAL

A. PREJUDICIAL QUESTION
¶ 6. Ludgood alleges that the State asked him an improper question during cross-examination. The question was "do you blame her (Cassandra) for grabbing that butter knife?" Ludgood alleges that the answer *1224 to this question amounted to an admission of guilt.
¶ 7. The State stated that it asked the question in order to establish motive. Ludgood's counsel objected based on materiality, but the trial court overruled the objection. Each time that the State repeated the question, defense counsel objected. Finally, defense counsel requested that the jury be excused so that he could move for a mistrial. The State requested that Ludgood be removed from the courtroom so that he would not be improperly instructed how to answer the question during the making of the motion. The court ordered Ludgood removed during the argument. After extensive argument on the motion, the court overruled the motion for mistrial finding that the issue of blameworthiness was introduced by the defense and was a proper issue for inquiry by the State on cross-examination. Ludgood finally answered the question regarding whether he blamed his sister by saying, "No sir, I don't guess."
¶ 8. The scope of cross-examination is broad. Its primary limit is the discretion of the trial judge and reversal only follows an abuse of that discretion. M.R.E. 611(b); Cantrell v. State, 507 So.2d 325, 330 (Miss. 1987). Ludgood cites us to no case in which a question such as this was held improper. Ludgood was a witness as was any other, and could be asked whether he was guilty of the crime alleged. He also could be asked for elaboration on claimed justifications for his actions. There is no exemption for a defendant on the stand from hard questions that might lead to admissions.

B. REMOVAL FROM COURTROOM
¶ 9. Ludgood argues that his Sixth Amendment right to be present at his own trial was violated when the trial court had him removed from the courtroom during the hearing on the motion for mistrial. The State requested that Ludgood be removed because the legal issue to be argued concerned a question that he had been asked on the stand, but to which he had yet to give an answer. It was possible that he would receive guidance during the argument on the motion, guidance intentionally or inadvertently given, on the most helpful manner in which to answer the question. After the motion was heard and overruled, Ludgood returned to the courtroom to continue testifying. No witnesses were presented during this argument. The trial court made an understandable and measured decision. The issue raised with us is whether it was a constitutional decision.
¶ 10. A defendant has the right under the Sixth Amendment to be "present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Since Allen, the Supreme Court has clarified that a defendant has the right to be present only at "critical stages" of the trial. The Court has defined this as proceedings in which the defendant's presence has a reasonably substantial relation to his opportunity to defend himself against the charges. United States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985). The Court found no critical stage and no substantial relation between presence and fairness at an in-chambers discussion with a juror regarding a question that arose about that juror's attitude towards the defendant. Id. at 523, 105 S.Ct. at 1483. As the Court put it:
The encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment. Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending.
¶ 11. Id. at 527, 105 S.Ct. at 1485. It is important to note that the right at issue in the Gagnon analysis was not the confrontation right, but the Fifth Amendment due process right. That is true here as well. The protection of this Sixth Amendment right is for the defendant's confrontation of witnesses. Id. at 526, 105 S.Ct. at 1484; Illinois v. Allen, 397 U.S. at 342, 90 S.Ct. at 1060. A broader right than just presence during receipt of evidence arises as "a condition of due process... ." Gagnon, 470 U.S. at 526, 105 S.Ct. at 1484, quoting Snyder v. *1225 Massachusetts, 291 U.S. 97, 105-106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).
¶ 12. The Supreme Court also has held that an accused child-molester did not have the right to be present during a pre-trial determination of the competence to testify of prospective witnesses who were children. Kentucky v. Stincer, 482 U.S. 730, 747, 107 S.Ct. 2658, 2668, 96 L.Ed.2d 631 (1987). Defense counsel was present and objected to his client's absence. The Court described the Confrontation Clause as protection for an accused's right of cross-examination of witnesses. Id. at 737, 107 S.Ct. at 2662-63. The Court found no interference with that right when the competency hearing was "unrelated to the basic issues of the trial," and instead focused on the maturity of the potential witnesses and their appreciation of the responsibility to tell the truth. Id. at 741, 107 S.Ct. at 2665. The Court also found no violation of Fifth Amendment due process rights:
[Stincer] has presented no evidence that his relationship with the children, or his knowledge of facts regarding their background, could have assisted his counsel or the judge in asking questions that would have resulted in a more assured determination of competency... . [T]here is no indication that respondent "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending.
¶ 13. Id. at 747, 107 S.Ct. at 2668 (brackets in last sentence are in Court's quotation).
¶ 14. Based on these precedents and on this record, we find no denial of Ludgood's Fifth or Sixth Amendment rights in excluding him from a legal argument. He alleges nothing to show that his presence would have assisted his attorney or the trial court. The only identifiable potential difference his attendance would have made was that he might have received improper advice in structuring a beneficial answer to the question that he had been asked. That is not a protected interest.
¶ 15. Mississippi Supreme Court precedents lead us to the same conclusion. A case that predates the just-cited United States Supreme Court precedents continues to be used for the proposition that "where the defendant is represented by counsel, the attorney may represent the defendant at any critical stage in the proceedings, and the defendant's absence will not violate his constitutional rights." Carr v. State, 655 So.2d 824, 850 (Miss. 1995), citing Ford v. State, 170 Miss. 459, 155 So. 220 (1934). Ford concerned the defendant's absence at a hearing on a motion to call a special venire. Ford, 170 Miss. at 464-465, 155 So. 220. No jury selection occurred and the motion itself was merely presented, argued, and granted in the defendant's absence. Defense counsel presented the motion without seeking his client's attendance. As the Court stated, "there is not any question of being confronted by the witnesses," and counsel "must have known that if he desired the presence of the accused, the court would promptly have seen to it that the accused was present." Id. at 466, 155 So. at 222. Thus Ford is both a waiver and a non-critical stage case, fully consistent factually with the later precedents.
¶ 16. Ford has been relied upon to hold that a defendant need not be present at off-the-record bench conferences and at a jury instruction conference. Carr, 655 So.2d at 850. Ford was also used as part of the support for holding that legal arguments can be held outside an accused's presence. Caldwell v. State, 481 So.2d 850, 852 (Miss. 1985). The court cited Ford for the general proposition that no constitutional violation occurs just because of the absence of the accused so long as his attorney is present, but then excepted from that rule those situations in which prejudice to the defendant would otherwise occur. Id. Thus even if the principle derived from Ford is over-broad to the extent that it would permit the attorney's presence to substitute for that of the accused even at critical stages, the Ford holding properly applies at least to non-critical stage, no-prejudice, and waiver situations.
¶ 17. Thus under both the United States and the Mississippi Supreme Courts' precedents, the conducting of this legal argument in Ludgood's absence was without error. It is conceivable that during many legal arguments, because they are fact-based or for other reasons, the accused has a due process *1226 right to be present. Removing the defendant from a proceeding that he wishes to attend is a risk that trial courts should avoid when possible, as the constitutional rights involved are significant and will cause reversal when error and harm are shown. However, it is the defendant's burden in a claim such as this to show how his presence would have assisted his trial counsel and was necessary to avoid prejudice. Ludgood has not done so. Since we find no reasonably substantial relation between this defendant's presence at this legal argument and the fullness of his opportunity to defend himself against the offense charged, there was no error.

II. DENIAL OF JURY INSTRUCTIONS D-2 & D-3
¶ 18. Ludgood offered jury instruction D-2 on the lesser-included offense of simple assault. He also wanted D-3, a simple assault form of the verdict. Both were denied. Ludgood argues that there was extensive evidence supporting the offense of simple assault and both instructions should have been given. The trial court relied on Miss. Code Ann. § 97-3-7 (Rev. 1994), Hunt v. State, 569 So.2d 1200 (Miss. 1990) and Hutchinson v. State, 594 So.2d 17 (Miss. 1992) in determining that instructions D-2 and D-3 should not be given.
¶ 19. A lesser offense instruction is only required where based on the evidence, a reasonable juror could not exclude the lesser offense beyond a reasonable doubt. Jackson v. State, 672 So.2d 468, 483 (Miss. 1996). The supreme court in Hutchinson observed that the legislature had added the words "with a deadly weapon" to the aggravated assault section of the statute. The supreme court stated:
This suggests a statutory scheme where conduct which is simple assault under Section 97-3-7(1)(a) becomes aggravated assault under Section 97-3-7(2)(b) when done `with a deadly weapon'. The scheme is completed when we realize that a subsequent subsection of the simple assault definition includes the negligent injury to another with a deadly weapon. Miss. Code Ann. § 97-3-7(1)(b) (Supp. 1987).
¶ 20. Hutchinson, 594 So.2d at 19. Ludgood admits aiming and firing the rifle at the vehicle occupied by Cassandra, Addison and Jamie. He does not even suggest that he acted negligently in aiming at the vehicle or that he accidentally fired. Instead, he argues that he did not intend to injure the occupants. Based on the evidence, a reasonable juror would have had to exclude negligent use of the deadly weapon, and therefore beyond a reasonable doubt could not have found guilt of simple assault. Accordingly, the simple assault subsection is inapplicable in this case.
¶ 21. Nevertheless, Ludgood argues that by not granting the proposed instructions, the trial court unilaterally excluded much of the evidence adduced at trial from the jury's consideration. Ludgood alleges that the judge sent an inference to the jury that he must be presumed to have intended to use the rifle when he picked it up. He cites a case in which an instruction was given that "`[t]he law also presumes that a person intends the ordinary consequences of any voluntary act committed by him.'" Hydrick v. State, 246 Miss. 448, 453, 150 So.2d 423, 425 (Miss. 1963). The supreme court found this to be reversible error because it invaded the province of the jury. Id. No such instruction was given here. We find no relevance to the case, and find no error.

III. SENTENCE OF LIFE IMPRISONMENT
¶ 22. Ludgood argues that his life sentence as a recidivist without the benefit of early release or parole is disproportionate to the offense, excessive, and constitutes cruel and unusual punishment. A review of the record shows that Ludgood did not challenge the application of the recidivist statute, but rather the language of the statute. Miss. Code Ann. § 99-19-83 (Rev. 1994). The section mandates the imposition of a life sentence without the possibility of a reduction in sentence or parole in cases of violent habitual offenders such as Ludgood.
¶ 23. In his brief, Ludgood goes to great lengths to attempt to show this Court that the trial judge had discretion in sentencing *1227 despite the language of the statute. The trial judge on the record decided that he was allowed discretion in sentencing. He exercised it by imposing the maximum sentence as appropriate in Ludgood's case. The trial judge performed a proportionality review and determined that in light of his prior crimes, Ludgood should be sentenced to life in prison without the possibility of early release or parole.
¶ 24. A sentence will be upheld if it is within the statutory limits. Sanders v. State, 678 So.2d 663, 669 (Miss. 1996). That is precisely the situation here.
¶ 25. THE JUDGMENT OF THE GREENE COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF AGGRAVATED ASSAULT AND THREE CONCURRENT SENTENCES OF LIFE AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO GREENE COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.