KING, P.J.,
for the Court:
¶ 1. Donald Warren Leffingwell was convicted of murder and sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Leffingwell has appealed and assigned three errors. This Court quotes those errors verbatim:
I. THE COURT ERRED WHEN, OVER OBJECTION BY THE DEFENDANT, IT REFUSED TO ALLOW THE DEFENDANT TO BE PRESENT DURING THE QUALIFYING OF THE JURY, THEREBY REMOVING HIS ABILITY TO ASSIST IN HIS OWN DEFENSE DURING THIS VITAL STAGE IN THE PROCEEDINGS.
II. THE COURT ERRED IN ALLOWING THE STATE OF MISSISSIPPI TO RECALL WITNESS, SHERIFF DONALD GRAY, OVER OBJECTION AND MOTION OF THE *880 DEFENDANT, ON THE SECOND DAY OF THE TRIAL TO REHABILITATE HIS FALSE AND/OR ERRONEOUS TESTIMONY OF THE PREVIOUS DAY.
III. THE COURT ERRED WHEN IT REFUSED TO GRANT JURY INSTRUCTION NUMBER D-15, REGARDING ACCOMPLICE TESTIMONY, IN THAT THE STATE RELIED UPON THE TESTIMONY OF CINDY LOU COOK, WHO WAS ARRESTED IN CONNECTION WITH THE EVENTS FOR WHICH THE DEFENDANT WAS TRIED AND CONVICTED.
¶ 2. Finding no error, this court affirms the circuit court judgment.

FACTS

¶ 3. On November 8, 1997, Donald Leff-ingwell offered Cindy Cook a ride to Byha-lia, Mississippi. Before traveling to Byha-lia, Leffingwell stated a desire to have her meet three of his friends, “Red”, Red’s wife, and Tommy Thompson.
¶ 4. Leffingwell and Cook met his friends at a tattoo shop in Vaiden, Mississippi. They arrived at the shop at approximately 10:00 p.m., and thereafter drank beer and played pool. Eventually, Leff-ingwell, Cook and Thompson left the tattoo shop and went across the street to a hotel.
¶ 5. After arriving at the hotel, Leffing-well and Thompson argued outside in the parking lot. Cook remained in a hotel room. According to Cook, while looking out a hotel, room window, she saw Thompson wave a gun and then walk out of the parking lot. At this point, Leffingwell walked into the hotel room and stated that Thompson had shot at him.
¶ 6. Later that evening, Thompson returned to the hotel room and apologized to Leffingwell. Leffingwell refused the apology and insisted that Thompson leave. According to Cook, when Thompson left, Leffingwell stated to her that he was going to kill him.
¶ 7. The next morning, Leffingwell and Cook went to the tattoo shop where they ran into Thompson. After talking to Thompson momentarily, Leffingwell decided to give him a ride to Grenada, Mississippi. While riding to Grenada, Thompson mentioned that he had to urinate. Leff-ingwell took an exit off the highway and began to look for a dirt road. Thompson indicated three times that he had seen an appropriate place to stop, but Leffingwell continued to drive. Leffingwell finally stopped on a dirt road, and both men got out of the truck to urinate.
¶ 8. Leffingwell returned to the truck, but yelled at Thompson to remain off the road. He removed a nine millimeter handgun from underneath his coat, aimed it partially out of the truck window and shot Thompson five times. Leffingwell then got out of the truck and walked over to Thompson. He picked up Thompson’s left hand, and stated to Cook that Thompson was dead.
¶ 9. Leffingwell returned to the truck and ordered Cook to get down on the floorboard. They left the area and headed back to Vaiden to retrieve Leffingwell’s tattoo guns. Upon retrieving the tattoo guns, Leffingwell went to talk to Red. He and Cook then drove to Nevada.
¶ 10. Later that evening, Derek Kendall drove down the dirt road where Thompson had been shot. He noticed Thompson’s body lying on the ground. Mr. Kendall called the sheriffs department to report that he had seen an injured man.
¶ 11. Sheriff Donald Gray, several deputies and an ambulance went to the reported scene. The ambulance personnel were unable to revive Thompson. He died at the scene.
¶ 12. Dr. Steven Haynes, a pathologist, performed an autopsy on Thompson. He determined that Thompson sustained five gunshot wounds: two in the back, one in the back of the left arm, one in the back of the head, and one on the left side of the left jaw. It was Dr. Haynes’s opinion that *881 Thompson died of a distant and penetrating gunshot wound to the back. The manner of death was homicide.
¶ 13. After several weeks, Cook returned to her home in Memphis, Tennessee. She reported the incident to the Carroll County Sheriffs Department and gave a statement. Cook was charged as an accessory to Thompson’s murder.
¶ 14. Leffingwell was arrested in Reno, Nevada on December 24, 1997, and subsequently indicted for murder. A trial was held, and the jury convicted Leffingwell. His motion for judgment notwithstanding the verdict and new trial was denied. Leffingwell now appeals his conviction and sentence.

ISSUES

I. THE COURT ERRED WHEN, OVER OBJECTION BY THE DEFENDANT, IT REFUSED TO ALLOW THE DEFENDANT TO BE PRESENT DURING THE QUALIFYING OF THE JURY, THEREBY REMOVING HIS ABILITY TO ASSIST IN HIS OWN DEFENSE DURING THIS VITAL STAGE IN THE PROCEEDINGS.
¶ 15. Leffingwell contends that the trial court erred by not allowing him to be present during the qualification of the jury.

Law

¶ 16. The supreme court has determined that “a defendant has the right to be present only at ‘critical stages’ of the trial.” Ludgood v. State, 710 So.2d 1222, 1224 (Miss.App.1998). These stages have been defined as “proceedings in which the defendant’s presence has a reasonably substantial relation to his opportunity to defend himself against the charges.” Id.

Analysis

¶ 17. Prior to the calling of the instant case, the trial judge proceeded to qualify the pool of prospective jurors. Leffing-well’s attorney objected, stating that his client was entitled to be present during this stage of the trial proceedings. The trial judge overruled the objection and held that the defendant was not entitled to be present at jury qualification because the case had not officially been called. ¶ 18. A defendant has the right under the Sixth Amendment to be present in the courtroom only at critical stages of the trial. Id. These stages dictate that the defendant’s presence in the courtroom has a reasonably substantial relation to his opportunity to defend himself against the charges. Id.
¶ 19. In the instant case, Leffingwell argues that he should have been present during the qualification of the jurors. Yet, he alleges nothing to demonstrate that his presence would have assisted his attorney in his defense. Id. at 1225. During the qualification process, the trial judge merely asked questions regarding the availability of the prospective jurors to serve on a jury. His questions centered around their ages, ability to read and write, existence of felony convictions, registered voter status, past jury service, present status of any personal case pending in court, employment with the Mississippi Department of Corrections, personal or family illness, and business and financial hardships. At this stage prior to trial, Leffingwell’s presence in the courtroom did not have a reasonably substantial relation to his opportunity to defend himself against the charge of murder. His case had not been called nor had juror selection begun. This Court finds no merit to Leffingwell’s first assignment of error.
II. THE COURT ERRED IN ALLOWING THE STATE OF MISSISSIPPI TO RECALL WITNESS, SHERIFF DONALD GRAY, OVER OBJECTION AND MOTION OF THE DEFENDANT, ON THE SECOND DAY OF THE TRIAL TO REHABILITATE HIS FALSE AND/OR ERRONEOUS TESTIMONY OF THE PREVIOUS DAY.
*882 ¶ 20. Leffingwell contends that Sheriff Gray should not have been allowed to testify on redirect examination regarding his previous testimony about the number of shells found in Thompson’s gun. In pertinent part, Sheriff Gray’s testimony reads as follows:
Q: What was your testimony with regard to the bullets that were in the gun, Sheriff?
A: At the time I testified, I testified that the gun contained five live rounds of ammunition.
Q: Was that correct?
A: That was not correct, but that is what I thought to be correct at the time I testified.
Q: And what was, what was, in fact, in the gun and when did you notice that?
A: When I unloaded the gun here on the stand yesterday for safety reasons, that is the first time that these shells had actually been removed from this gun. And at the time I was placing them in the bag, I thought I noticed that one of the rounds was an empty round.
Q: And what did you do?
A: I immediately notified the attorneys after my testimony yesterday.
Q: All right sir. And so how many live rounds were in the weapon yesterday?
A: There were four live rounds, one empty round.
Q: And why was it that you thought that there were five live rounds when you first testified?
A: On the date that this happened and when we, we secured the gun and I brought it back to the office, we upon examining the gun at the office, we were trying to be very careful about the handling of the gun as far as trying not to touch it. We didn’t know if it might later be needed for latent fingerprints or test firings, and as I recall, we did not actually remove the shells from the chambers, but we just examined the end of the shells, and it was our opinion that we did not see any firing marks, or it was our opinion at that time that none of these shells had been fired. But yesterday was the first time that the shells had actually been removed from the gun.

Law and Analysis

¶ 21. Leffingwell incorrectly asserts that Sheriff Gray was improperly allowed to testify on redirect examination. Sheriff Gray was actually recalled as a witness after having completed his testimony the previous day.
¶ 22. It is within the trial court’s discretion to decide whether to allow a witness to be recalled to the stand. Ellis v. State, 661 So.2d 177, 179 (Miss.1995). Miss. Rule of Evidence 611(a) provides that “the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth”.
¶ 23. The record reveals that Sheriff Gray testified incorrectly regarding the number of spent shells found in Thompson’s gun. The State requested that he be recalled as a witness merely to correct his previous testimony. In the interest of the effective and accurate presentation of facts, it was well within the trial judge’s discretion to allow Sheriff Gray to retake the stand to state the correct number of live and empty shells that had been found.
¶ 24. This Court notes that Leffingwell claimed during trial that because Thompson had fired a gun at him while on the dirt road, he discharged his weapon in self-defense. Sheriff Gray’s testimony on recall would appear to have aided Leffing-well’s defense rather than hindered it.
III. THE COURT ERRED WHEN IT REFUSED TO GRANT JURY INSTRUCTION NUMBER D-15, REGARDING ACCOMPLICE TESTIMONY, IN THAT THE STATE RELIED UPON THE TESTIMONY OF CINDY LOU COOK, WHO WAS ARRESTED *883 IN CONNECTION WITH THE EVENTS FOR WHICH THE DEFENDANT WAS TRIED AND CONVICTED.
¶ 25. Leffingwell contends that because Cook had been charged as an accessory and believed herself to still be charged when testifying at trial, Instruction D-15, an accomplice instruction, should have been granted.

Law

¶ 26. In determining whether a defendant is entitled to a cautionary instruction on accomplice testimony, this Court has stated that an accomplice is a person who is implicated in the commission of a crime. Williams v. State, 729 So.2d 1181 (¶ 9) (Miss.1998).

Analysis

¶ 27. This Court focuses on whether Cook was charged as an accomplice at the time she testified at trial. Cook’s testimony suggests that she still believed herself to be subject to the accomplice indictment. However, Sheriff Gray testified that after an investigation of Cook’s participation in Thompson’s death, he found “no evidence that she was an accomplice as far as in this murder.” In light of the sheriffs testimony, the granting of a cautionary accomplice instruction would have been improper. At the time of trial, Cook was not pursued by the State as an accomplice. Accordingly, the trial judge did not err in failing to grant this instruction.
¶ 28. Finding no error in the instant case, this Court affirms the circuit court judgment.
¶ 29. THE JUDGMENT OF THE CARROLL COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CARROLL COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
MOORE, J., NOT PARTICIPATING.