829 So.2d 688 (2002)
Sheila Ann SCOTT, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01957-COA.
Court of Appeals of Mississippi.
June 25, 2002.
Rehearing Denied October 29, 2002.
*690 Gail P. Thompson, Oxford, attorney for appellant.
Office of the Attorney General by: Deirdre McCrory, attorney for appellee.
Before KING, P.J., LEE, and IRVING, JJ.
LEE, J., for the court.
¶ 1. In September 2000, Sheila Ann Scott was convicted in the Tunica County Circuit Court of capital murder and of aggravated assault. She was sentenced to serve life imprisonment for the murder and five years for the aggravated assault charge, said sentences to run concurrently.
¶ 2. On appeal, Scott raises the following issues for our review: (1) did the trial court err in denying her motion to quash the indictment for violating her right to a speedy trial; (2) did the trial court err in giving the state's requested instructions concerning elements of the crimes of capital murder and aggravated assault and in denying the appellant's motion for directed verdict at the close of the State's case-in-chief; (3) did the trial court err in failing to grant a mistrial; (4) did the trial court err in allowing certain cross-examination of the defendant; and (5) was the appellant's right against double jeopardy violated? Having reviewed these issues and finding no merit, we therefore affirm.

FACTS
¶ 3. Jerry Thompson lived with Sammy Wilburt and Thompson's girlfriend, Plashett "Shun" Garner in Tunica. The appellant, Sheila Scott, had been in a homosexual relationship with Shun prior to Shun's dating Thompson. Scott confronted Thompson to inform him that his relationship with Shun would not work out because Shun did not like being with men and because Scott was still secretly seeing Shun.
¶ 4. The incident at issue in this case occurred in Tunica on or about May 10, 1997. On that date, Sheila Scott, James Meeks and Tyrone Havercome drove a U-Haul *691 truck, which Scott had rented earlier, to Thompson's home. Stephanie Lewis was at Thompson's home that day and testified that two teenage boys knocked on the door and asked if Sammy Wilburt was there, which she affirmed. The boys entered and went to Wilburt's room where Wilburt and Thompson were, and Lewis testified that one of the boys asked which of them was dating Shun. After that, Lewis testified she heard shots and ran to hide. When she emerged, she found both Wilburt and Thompson lying on the floor in blood. Thompson eventually recovered, but Wilburt later died from his wounds.
¶ 5. After the shots were fired, Scott, who had remained in the truck, backed the U-Haul up to the door of Thompson's home, and Havercome and Meeks gathered some items from the house and put them into the back of the truck, then they both got into the truck and Scott drove off. A neighbor called the police, and they pursued the U-Haul truck on a high-speed chase. After evading one road block, Scott ran through another road block, but the officers shot out the truck tires, forcing Scott to stop the truck.

DISCUSSION OF THE ISSUES

I. DID THE TRIAL COURT ERR IN DENYING THE APPELLANT'S MOTION TO QUASH THE INDICTMENT FOR VIOLATING HER RIGHT TO A SPEEDY TRIAL?
¶ 6. With this first issue, Scott argues that the trial court erred in not granting her motion to quash the indictment for violation of her right to speedy trial. We look to our standard of review concerning allegations of denial of speedy trial. First, concerning a constitutional right to speedy trial, we apply those factors enunciated in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which include (1) length of delay, (2) reason for delay, (3) the defendant's assertion of his right to a speedy trial and (4) prejudice resulting to the defendant. For constitutional purposes, the right to a speedy trial attaches at arrest. Perry v. State, 637 So.2d 871, 874 (Miss.1994). Under Mississippi statutory law, the 270 day time is calculated from the date of arraignment. Miss.Code Ann. § 99-17-1 (Supp.2001).
¶ 7. We initially note that Scott only raised the issue of speedy trial as it concerned her first trial which took place in June 1997. At no point thereafter did she raise the issue as it concerned her retrial; thus, we find the issue procedurally barred as it concerns her retrial. We do, however, briefly address our standard of review as it applies to the merits.
¶ 8. Although Scott asserts to the contrary, we find that the time from Scott's arraignment or arrest in May 1997 to the date of the first trial in June 1997 is not significant at this point because "the statutory 270 day rule is satisfied once the defendant is brought to trial, even if that trial results in a mistrial. Thereafter, the time of retrial is within the discretion of the trial court." Bryant v. State, 746 So.2d 853(¶ 61) (Miss.Ct.App.1999). Accordingly, we are only permitted to examine the passage of time from the first trial to the retrial.
¶ 9. From the date of Scott's trial on June 7, 1999, to the date of her retrial on September 11, 2000, approximately fifteen months passed. Since Scott failed to raise this issue at the trial court level, the only Barker factor which she may satisfy is length of delay as no other evidence has been preserved for our review. See Sanders v. State, 678 So.2d 663, 670 (Miss.1996). We are to review all four Barker factors together. State v. Magnusen, 646 So.2d 1275, 1278 (Miss.1994). However, without *692 any evidence concerning the other three factors, we cannot conduct such evaluation, and having first found this issue to be procedurally barred, we additionally find no merit.

II. DID THE TRIAL COURT ERR IN GIVING THE STATE'S REQUESTED INSTRUCTIONS CONCERNING ELEMENTS OF THE CRIMES OF CAPITAL MURDER AND AGGRAVATED ASSAULT AND IN DENYING THE APPELLANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF?
¶ 10. With this issue, Scott claims the trial court abused its discretion in allowing the State's instructions S-1, S-2, and S-3 which instructed the jury on the elements of the capital murder and the lesser-included offense of murder and of aggravated assault. Essentially, Scott argues that the evidence did not show she had the requisite mental state to commit murder and that she only intended to commit robbery when she drove to Thompson's home. We look to our standard of review:
In considering the sufficiency of the evidence supporting the verdict, this Court will consider all of the evidence in the light most favorable to the verdict. Credible evidence which is consistent with the guilty verdict must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. This Court may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Spann v. State, 771 So.2d 883 (¶ 16) (Miss. 2000) (citations omitted).
¶ 11. Scott claims that she only intended to rob Thompson, not to kill him as the State contends. She claims she had no idea that the two boys had a gun when they entered Thompson's home, and she was only asked to be the "driver." Viewing the evidence in a light most favorable to the State, we find that the evidence supported the verdict of guilt: Scott rented the U-Haul truck in her own name, it was known that Scott was angry with Thompson for Thompson's involvement with Shun, Scott told Havercome that she wanted something bad to happen to Thompson, Scott drove the U-Haul truck to Thompson's home and notified the two boys that the vehicle parked outside was Thompson's, Scott stayed in the driver's seat while the two boys went inside Thompson's home, and Scott then drove the getaway truck recklessly through two roadblocks as she evaded police after the shooting had occurred. Viewing this credible evidence in a light favorable to the verdict, we find that Scott's argument as to the sufficiency of evidence is without merit.

III. DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL?
¶ 12. With her third issue, Scott argues that the trial court should have declared a mistrial. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Hall v. State, 785 So.2d 302(¶ 6) (Miss.Ct.App.2001).
¶ 13. In support of this claim, Scott refers to comments the judge made after Jessie Powell testified. The judge admonished Powell, "Go back to the witness room. Don't discuss it with anyone. I've seen some discussions going on down there, Mr. Powell, about these cases. *693 They need to follow the Court's instructions about what is going on in this courtroom among the witnesses." Rule 3.12 of the Uniform Rules of Circuit and County Court Practice states reasons for declaring a mistrial:
Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case. Upon motion of a party or its own motion, the court may declare a mistrial if:
1. The trial cannot proceed in conformity with law; or
2. It appears there is no reasonable probability of the jury's agreement upon a verdict.
URCCC 3.12. The rule explicitly states that "any party" may move for a mistrial. At no point after the judge's admonishment to Powell did Scott raise any objection or move for mistrial, thus we will not put the trial court in error for failing to grant relief which was never requested. Ross v. State, 603 So.2d 857, 862 (Miss. 1992). Rule 3.12 also states that the court may declare a mistrial if the trial cannot proceed or if it appears the jury cannot agree on a verdict. Scott has provided no evidence concerning either of these points; thus, we find the judge had no basis upon which to declare a mistrial. This issue has no merit.

IV. DID THE TRIAL COURT ERR IN ALLOWING CERTAIN CROSS-EXAMINATION OF THE DEFENDANT?
¶ 14. With this issue, Scott argues that the trial court should have prevented cross-examination of Scott with regard to the murder weapon. "The scope of cross-examination is broad. Its primary limit is the discretion of the trial judge and reversal only follows an abuse of that discretion." Ludgood v. State, 710 So.2d 1222(¶ 8) (Miss.Ct.App.1998).
¶ 15. The following exchanges took place, first, on direct examination between Scott and her defense counsel, Ms. Thompson, and then between the prosecutor and Scott on cross-examination.
MS. THOMPSON: All right. Now, this gun, Sheila, when did youdid you ever see the gun? When did you first see the gun?
DEFENDANT: I never saw the gun.
MS. THOMPSON: Not even when they got back in the truck?
DEFENDANT: No. I never saw the gun.
MS. THOMPSON: All right. All right. So you gotat the pawn shop, you got you didn't get a gun?
DEFENDANT: No, Ma'am.
On cross-examination, Scott was questioned in rebuttal concerning the gun:
PROSECUTOR: Okay. Now, did you go to that pawn shop toyou said earlier to get a microwave
DEFENDANT: No, sir.
PROSECUTOR:on that day.
DEFENDANT: I went to pawn a microwave and my gold chain, so that I could have some money to get my mother a Mother's Day gift.
PROSECUTOR: The fact is you went there to pawn it and get that .9 millimeter
BY MS. THOMPSON: I object, your Honor. He is interjecting testimony that's not even in evidence
BY THE COURT: It's a question.
The objection is overruled.
PROSECUTOR: Did you do that?
DEFENDANT: No, sir.
*694 ¶ 16. In support of her claim that a mistrial should have been granted after this exchange, Scott cites Mickell v. State, 735 So.2d 1031 (Miss.1999). In Mickell, the supreme court reversed Mickell's conviction in part because the prosecutor made improper comments concerning the sale of a gun earlier the day of the crime, when on direct testimony Mickell's possession of a gun was the topic. Mickell, 735 So.2d at (¶ 15). The question of whether Mickell tried to sell a gun had not been brought out on direct examination or at any time previously during the trial, and the supreme court found that it was improper for revelation on cross-examination. Id. at (¶ 20). The court pointed out:
Cross-examination into the character of a witness may not be in the form of attempts to discredit him by means of sneers and innuendo. Hence it is improper, under the pretense of affecting the credibility of a witness, to propound interrogatories without any attempt or pretense to establish the truthfulness of the matters suggested by such inquiry and thereby cast insinuations on the witness
. . . .
Mickell, 735 So.2d at (¶ 18). The present case is unlike the situation in Mickell where the prosecutor's insinuations of criminal conduct were unsupported by any proof. In Scott's case, the prosecutor's question during cross-examination was the same question posed by defense counsel on direct examination. As the State points out, the prosecutor's question added nothing to what already had been brought out by the defense during its direct examination of Scott. Although Scott now claims that the prosecutor's question was improper because it insinuated that she was being untruthful concerning her alleged purchase of the gun, we do not find this to be the case. The trial judge did not abuse his discretion in his handling of the exchange, and we find no merit to this issue.

V. WAS THE APPELLANT'S RIGHT AGAINST DOUBLE JEOPARDY VIOLATED?
¶ 17. With her final issue, Scott argues that her right against double jeopardy was violated since she was tried a second time for the same crime for which she was effectively acquitted in a first trial. On July 19, 1999, Scott filed a motion to quash the capital murder indictment due to double jeopardy. In that motion, she included an affidavit from the jury foreperson from the first trial which showed that the jury was deadlocked 10-2 for acquittal, with the two remaining jurors wanting to find Scott guilty of murder but not capital murder. The first trial ended with a mistrial, and in her motion subsequent to the first trial, Scott claimed that none of the twelve jurors believed the State had met its burden of proving that she was guilty of capital murder, for which she was indicted, thus effectively finding her not guilty of the crime for which she was indicted. She claims that the jury's unanimous agreement that she was not guilty of capital murder was in essence an acquittal. We disagree with Scott's argument.
¶ 18. The United States Constitution provides protection against double jeopardy in the Fifth Amendment ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb..."). Likewise, the Mississippi Constitution contains a similar provision which provides that, "No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22. The supreme court has held that a defendant can be re-prosecuted after a first trial ends in mistrial. See McGraw v. State, 688 So.2d 764, 767 (Miss.1997); *695 Beckwith v. State, 615 So.2d 1134, 1147-48 (Miss.1992). Scott's argument consists of a misinterpretation of the law with regard to double jeopardy. Although she claims a de facto acquittal by virtue of facts alleged in the jury foreperson's affidavit, the first trial did end in a mistrial, and the State was not barred from reprosecuting her for the same charge. We find no error in the trial court's denial of Scott's motion to quash the indictment for violation of double jeopardy.
¶ 19. THE JUDGMENT OF THE TUNICA COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AND CONVICTION ON COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE IMPOSED IN COUNT I SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED AND SENTENCE IN COUNT II SHALL RUN CONCURRENTLY TO SENTENCE IN COUNT I. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.